United States District Court
For the Eastern District of North Carolina
Western Division
No 5:23-CR-00192-M-RN-1

|  |  |
|---|---|
| United States of America ) | |
| ) | |
| v. ) | Motion for Continuance with Addendum |
| ) | |
| Eric Charles Welton ) | |
| Defendant ) | |

FILED
APR 0 4 2024
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

Defendant, Eric Charles Welton, moves the court to grant a one month continuance of the arraignment scheduled for 10-Apr-2024. Defendant directly so moves having lost contact with counsel after 21-Mar-24. Upon receiving no update from counsel by 10:00 a.m. 30-Mar-24 Defendant is concerned the scheduled arraignment will proceed prematurely in opposition to actions last discussed with counsel. No intention to remove counsel is hereby expressed although this filing embodies a communication difficulty inherent in the conditions and administration of the Columbus County Detention Center (where Defendant is currently warehoused). This difficulty is explored in an addendum to this motion for the purpose of improving the operations of the Eastern District of North Carolina.

The public's best interest is served by this continuance as it preserves the status quo while continuing to make substantial progress towards a plea agreement, thereby potentially avoiding the need for trial. Since

the change of counsel in Dec 2023 and the resolution of attendant issues in Jan 2024 significant repairs have been made to the damage done by prior counsel, Christian Dysart. This includes removal of unacceptable plea stipulations, the introduction of key elements known to prior counsel since July 2023, and the pursuit of information regarding Defendant's passport and expatriation status. For example, Defendant alerted prior counsel of the need to contact the U.S. Embassy in Lusaka, Zambia in early July 2023 in order to quickly and simply obtain the passport and secure information relevant to plea finalization. Prior counsel's refusal to act resulted in destruction of the passport and has complicated and continues to delay recovery of the information. Defendant is uncomfortable completing a plea agreement without confirmed information given the gravity of such an agreement and the propensity of the government to make occasional mistakes regarding this passport as we saw in the information provided, erroneously, by AUSA Radics on 30-May-23 and earlier, as recounted by Defendant on 8-Jan-24.

Consequently additional time is required to complete repairs, confirm expatriation issues, and finalize plea negotiations to determine if and how to implement a plea agreement - which is the current goal.

This, the 30th day of March, 2024.

Eric Charles Welton
Defendant

Addendum - Motion for Continuance

Defendant is compelled to establish an accurate account of the delays accrued during the first three months of 2024 as well as to comment positively where merit is warranted regarding the operations of the Eastern District of North Carolina. This information is provided in the interests of improving the operation of our institutions for the betterment of future participants. To accomplish this accounting Defendant must introduce the principles guiding his evaluation of the plea agreement. These principles have directed his thinking since June 2023 and have been clearly communicated to both prior and current counsel.

The principles are: Any non-trial resolution must...
1) ... account for a path home and not block re-uniting with family, community, and domicile. Any plea requiring permanent isolation from family or permanent exile is not acceptable.
2) ... establish an accurate account of events, including correction of the misrepresentations made by AUSA Radics on 30-May-23 and earlier.
3) ... account for government misconduct before and after detention, either by resolution or by freeing Defendant to pursue future prosecution.

These principles are contentious for two reasons:
1) Neither prior nor current counsel have significant experience dealing with matters involving either the State Department or foreign governments. Consequently issues of expatriation and relations with our own offices and policies overseas have been difficult. Defendant is prohibited from directly deploying his

knowledge and the cost of instructing counsel has proved insurmountable.

2) Current counsel disagrees with Defendant's decision making process and does not support this information or these considerations fully. As a result Defendant must operate using available legal resources and non-counsel support. The current facility blocks access to the law library, blocks access to USPS mail for non-counsel support, and constrains attorney/client discussions such that healthy discussion of philosophical differences is simply not possible.

Via the current practices, the USMS and current facility strategically undermine the best interests of the public by starving the adversarial process of one of the adversaries.

The move from Onslow County Detention Center (OCDC) to Columbus County Detention Center (CCDC) was a mixed blessing. The shift from OCDC's culture of officer violence to CCDC's more sedate environment was a definite win. The loss of coffee and books at CCDC is a definite loss. Recall from previous communication that Defendant asserted the following about OCDC:

1) Chris Thomas, a corrupt sheriff, was illegally blocking mail
2) Southern Health Partners, the medical services provider, was continuing a program of medical mismanagement begun in Georgia by the corruption of medical data on USMS transfer forms consistent with threats made to Defendant by Marshals about using weaponized procedure to effect an untraceable pretrial execution.

Defendant is happy to report that the medical issue was resolved immediately upon transfer to CCDC. In fact, Defendant's health measurably and objectively improved once the forced over- and under-dosing ceased. The entire problem appears to have been bureaucratic and somehow CCDC was able to solve, within 24 hours, what Southern Health Partners and Dysart-Willis could not solve in 8 months. This lends credence to Defendant's earlier suspicion that a non-medical factor was involved in the maintenance of his life-threatening situation. There is perhaps nothing quite like fear of death to motivate a "plea posture."

Unfortunately the matter of a corrupt county sheriff illegally blocking mail blossomed into a wholesale assault on communications and access to the courts. Conditions at CCDC include:

1) No effective access to a law library (or even a dictionary)
2) Access to non-local attorneys is limited to one video-call per week, this is about 5hrs/mo or results in an excessive carbon footprint w/o cause
3) Personal mail is forbidden entirely - thus no investigative, legislative, or evidentiary assistance is possible. This is mitigated by confused enforcement.
4) Legal mail is inspected pagewise to see if content "looks legal" - eg. letterhead
5) Grievances are occasionally blocked on the grounds "we are all criminals"
6) Notary services are blocked.
7) Personal messaging, such as with non-counsel defense, is severely limited
8) Administrator literacy is low and coherent communication with staff is difficult - there is no reliable, written facility policy

A key result of these conditions, particularly number 2, is that communication - even with your attorney - can be exceptionally time consuming and difficult. A 3 hour conversation about technical matters of international and domestic law could take 3 weeks due only to facility scheduling policy. For example, Defendant alerted counsel, in January, that negotiation of the plea agreement, which began in January, would take approximately 5 months due to facility scheduling. The same conversation could be wrapped up in one week sans detention. However, out of a respect for AUSA Radic's detention efforts and the substantial investment made by the state to date, it seems extensive continuation is the only path forward.

Lest it appear that CCDC alone drives this delay, it does not - that is simply the dominant theme. Other factors, such as the requirement that Defendant navigate complex federal bureaucracies with only a pencil and paper and without directories, search engines, or even reliable access to the USPS contribute heavily to delays. For these reasons Defendant must change the administration of the CCDC in order to expedite plea negotiations. This was pursued by first contacting USMS Raleigh, but that office proved to be of no value. Next, federal USMS, congressional representation and other state and federal agencies were contacted - to varying degrees of ongoing success. An additional step, which has been completed with the assistance of the North Carolina Prisoner Legal Services, has been to exhaust all administrative remedies for securing

access to services such as notary, law library, and the USPS. As this effort draws to a close the avenue now opens for filing Title 42 Section 1983 lawsuits seeking changes in policy rather than financial award. This appears to be the fastest way to communicate with the county sheriff given the obstacles placed by facility staff and the USMS. Once the lawsuits are complete, wrapping up the plea agreement should proceed quickly.

Lastly, to be very clear - none of the behaviours exhibited at CCDC are personally directed. The facility is poorly funded and the administrative staff is inexperienced and lacks training. You can not, for example, simply destroy mail because you do not wish to do the inmate the "favor" of delivering it. The facility needs documented policies and it needs oversight. A glowering, pot-bellied good ol' boy dripping tobacco spit into a styrofoam cup is insufficient leadership. This is different from OCDC where sheriff Chris Thomas is corrupt and ought to be removed - here CCDC just needs regular visits from seasoned, professional law enforcement from time to time. Defendant is working to make that happen.

Most importantly and in conclusion, these conditions are what drag a small task out into a multi-month ordeal at great cost to the taxpayer. These conditions are the source of the delays and this is not accurately reflected in the continuance requests my non-counsel defense network has observed in the clear court record.

Defendant seeks information - solid, confirmed information - in order to make an important decision. The USMS, using the CCDC, is effectively blocking access to that information. As an officer of the court, current counsel is advising Defendant to think about the decision differently, avoiding the need for a clear picture of anything other than the prosecution's story. The facility, for no sensible reason, denies the attorney and client time to have a robust and healthy discussion of the matter. The combined pressure to simply "give up and take the plea" is enormous.

This effective weaponization of procedure and institutional dysfunction leads to an overly high conviction rate. The extreme conviction rate of federal prosecutors is distinctly not a sign of excellence in prosecution, it is a sign of systemic failure. With over 166 of every 168 hours of every week forcibly wasted by CCDC, Defendant firmly believes his actions at CCDC have merit for the Eastern District of North Carolina.

This, the 30th day of March, 2024.

Eric Charles Welton
Defendant