FILED

JUL 0 3 2025

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ M.M. _____ DEP CLK    1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:23-CR-00192-M-1

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 5:23-CR-00192-M-1 |
| ) | |
| Eric Charles Welton, ) | ADDENDUM TO DEFENDANT'S |
| ) | SENTENCING MEMORANDUM |
| Defendant. ) | |

NOW COMES Defendant, Eric Charles Welton and respectfully submits the following sentencing memorandum ADDENDUM to supplement the record and provide this Honorable Court with additional information regarding the factors under 18 U.S.C. § 3553(a).

The defendant is deeply troubled by the developments of this case, specifically with the framing of the two charges which, as recently as the United States Probation Office's pre-sentence report show consistent signs of preserving the State's fundamental mischaracterization misrepresentation of the character of the offense and a misrepresentation of the nature of the defendant. This only offends 18 U.S.C. § 3553(a) but, in some cases, rises to the level of libel.

While nothing in this document is expected to materially change the lived experience of the defendant viz-a-viz sentencing, the defendant notes his abiding concern for accuracy of accounts as expressed in the 8-Jan-2024 hearing, when the defendant was assessed for mental competency and his understanding of the function of the court. At that time it was discussed whether or not the defendant may be mentally defective by virtue of perceiving the officers of the Attorney General and this Honorable Court as institutions which function as parts of a social whole, beholden to the society which sanctions them and owing an allegiance to that society through the instrument of posterity. The defendant pointed out that documents and records were increasingly indexed and analyzed and that small errors of record could take on a life of

their own. This, the defendant notes, has already happened with respect to the Attorney General's office and the Probation Office's libelous and defamatory claims that the defendant is some sort of Socialist radical.

On 8-Jan-2024 the defendant was reminded, through the discussion of aligned and opposing counsel, with deference to this Honorable Court's respectful silence on the issue, that what mattered in federal criminal cases was guilt and punishment, not the facts of the matter, the truth, or veridicality beyond the appearance of truthiness in the sense of what a 'reasonable person' would generally find plausible or believable upon cursory examination. In other words, what mattered, as the defendant was reminded, was whether or not the defense and prosecution spun a believable yarn - a practice the defendant continues to refer to as "purchasing freedom with a currency of lies."

The defendant, respectfully, refuses, even at this late juncture, to take such a cynical stance towards the hallowed institutions of our society and, submits this document out of respect for this Honorable Court, for the Institution of the court, and for his belief in the sanctity and sacred responsibility held by citizens of democratic societies to uphold the ceremonies of democratic Institutions. This document, far more than any sentence imposed in satisfaction of 18 U.S.C. § 3553(a)(1) demonstrates commitment to the principles of 18 U.S.C. § 3553(a)(2)(A) - namely that any sentence imposed promotes respect for the law.

The defendant feels that respect for institutions and intolerance for the abuses of institutions perpetuated by both defense and prosecution is even more important in this time of Institutional erosion, when the defendant's perceived adversary, the Republican Party, is leading the charge of undermining global faith in American Institutions. The defendant wishes to point out that Pam Bondi, the senior Law Enforcement Officer of the United States and ultimately the most senior authority guiding the prosecution of this case, does not respect the authority of this Honorable

Court [1]  The defendant, on the other hand, not only respects this Honorable Court but persists in demonstrating his reverence for the institution and for the rule of law, even at substantial risk to himself[2], by expressing that reverence through the pursuit of his uncompromising moral standards and sense of social justice.  The fact that the defendant believes that law should be applied with intelligence, compassion, and common sense and not wantonly, as if by a statue, so bound and blindfolded it can longer see the rust and decay on the scales of justice before it, does not diminish the defendant nor make the defendant mentally defective nor incompetent to stand before the court.

The defendant begs the forgiveness of this Honorable Court for tolerating this defendant's insistence on participating in the administration of justice and requests that the court recognize that sometimes the best intentions of practice still result in the deprivation of rights.  For example, as appears to be the norm in criminal defense representation, the 6th amendment right to the "assistance of counsel" has transmogrified into a de-facto right to remain silent, with the defendant's voice replaced by a few thumbs-up or thumbs-down semaphores signaling critical binary decisions.  The defendant has a long and deeply held belief that American society went wrong when citizens were blocked from participating directly in the circumstances of their governance, that many of the roots of American dissatisfaction with representation, with their deep feeling that their voices are simply not heard and that they are managed chattel disconnected from the mechanics of life and, as AUSA Warlick puts it, "it's just the way it goes",

---

[1] In https://www.appropriations.senate.gov/news/minority/at-hearing-with-attorney-general-bondi-senator-murray-slams-trumps-weaponization-of-doj-presses-ag-on-whistleblower-complaint-on-ignoring-court-orders-termination-of-public-safety-grants-for-communities - Pam Bondi states : "We will follow court orders, Senator. The entire administration will follow court orders. The problem arises in the district courts. All these districts courts throughout the country are tying our hands. But here's how we will follow them. When we get to the United States Supreme Court, we're winning. So yes, we are following the orders of the court,"

[2] The court, defense, and prosecution attacked the defendant and proposed civil commitment and political re-education because of the defendant's admittedly "flowery" appreciation for the institution of the court. The defendant does not apologize for getting a bit giddy and verklempt when given the opportunity to engage weighty institutions directly and to directly express his commitment to social change and justice.

stems from exactly this sort of blockade. The overreliance upon lawyers is a poison and the defendant believes deeply that American society is healthier when citizens can, and do, engage their institutions directly, politely, and civilly. It has been the experience of the defendant that American institutions do not reciprocate.[3]

In computer science, algorithms are bound by the condition of Garbage In / Garbage Out, or GIGO. A sensible and correct algorithm, or, in this case, a considerate and deliberative court, will nevertheless act oddly if it is fed nonsense. In this case, the nonsense it has been fed comes from both the defense and the prosecution. This was the case during the defendant's detention hearing[4], which was never re-challenged and this has been the case in all of the material brought to this Honorable Court. To be clear, the defendant places the responsibility for mis-informing the court squarely on both parties. Both have done little in the way of appealing to an "Objective Reality" and instead both offered nothing more but hearsay and allegations carrying the stink of "vague truthiness," although rooted, like any illusion, in a guarded glimpse of the real.

In terms of Charge 2, one of the most pernicious mis-representations is the claim that the defendant was angered over the denial of a visa. This is simply incorrect and it is not what the evidence shows[5]. The defendant was attempting to press civil and/or criminal charges against a consular official who had threatened his daughter, treated his wife poorly, and demonstrated substantial negligence in the execution of official state department policies and procedures.

---

[3] To wit, the defendant was attacked by this very court with an effort at political re-education through psychiatric civil commitment and the core essence of both charge 1 and charge 2 is the simple fact that institutions refuse to communicate. The Republican Party in charge 1 and the United States Department of State in charge 2 simply refuse to communicate in any meaningful way, opting instead for patterns which treat citizens like chattel and force them into a posture of Sovietized "Learned Helplessness"

[4] The official record states that the defendant waived his right to re-hold the detention hearing although that overlooks the fact that he was literally screaming in protest, continually in opposition. Rather than acknowledge that protest as an attempt to hold the detention hearing, the conflict was used as grounds to assert 4246 civil commitment actions against the defendant since the defendant would not follow the advice of his attorney which was to waive his right to the detention hearing.

[5] Elsewhere in this document is an affidavit, by Naphisa Welton, providing a first hand account of her experience of the encounter with the belligerent officer.

4

Attempting to lodge a criminal complaint against a consular official and to demand an official apology from a federal agency is a vastly different action than whining about a visa denial.

In terms of Charge 1, the belief that this was an issue about someone who got a few too many emails in an inbox and, to quote D.E. 15-4, was "*quick to anger and to threaten violence and murder following even slight provocation (essentially junk emails sent to him)*" is simply wrong. In fact, it is worth looking at the court's comment (D.E. 77 44:24-25, 45:1-7)

> Ms. Warlick, I understand your concern that you too might wish there was something -- there is this thing called the First Amendment to the Constitution of the United States which guarantees the right for people to speak to the government and for the government, including elected officials, to speak to the people, so long as they do so within the confines of the law, and asking someone for their vote is core First Amendment activity. It is unlikely that we will get a statute that forbids such contact.

Interestingly, the defendant agrees with AUSA Warlick on this. There absolutely must be a change to the existing legislation, to bring it in line with global norms, such as the GDPR[6], and the other legislative frameworks of mature and freedom respecting democracies. Specifically, when a Data Subject[7] explicitly requests termination of a communication, that takes precedence over the sender's right to infringe upon the recipient's cognitive liberty.[8]

---

[6] https://eur-lex.europa.eu/eli/reg/2016/679/oj/eng - REGULATION (EU) 2016/679 OF THE EUROPEAN PARLIAMENT AND OF THE COUNCIL of 27 April 2016 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data, and repealing Directive 95/46/EC (General Data Protection Regulation)

[7] In the context of the GDPR, a Data Subject is a person, like you or me, about whom data is processed or who is taking an action, like exercising Title 88, the "right to be forgotten" and demanding that an entity which has collected data and information about a Data Subject, delete that data. Unlike the United States, the European Union managed to work out a way to enshrine this right and balance the concerns of law enforcement, national security, international security, and democratic values without societal collapse. The United States however, without protections like the GDPR, has devolved into one of the least healthy democracies, widely revered global politics watchdogs have actually downgraded the United States from "democracy" to "Anochracy". (https://www.systemicpeace.org/)

[8] From (https://en.wikipedia.org/wiki/Cognitive_liberty) : **Cognitive liberty**, or the "right to mental self-determination", is the freedom of an individual to control their own mental processes, cognition, and consciousness. It has been argued to be both an extension of, and the principle underlying, the right to freedom of thought.

To be clear, the comment here is not that the court is being inconsiderate or inaccurate, only that the court is acting on incomplete information. The conditions of 18 U.S.C. § 3553(a)(1) simply have not been met.

In general it is illegal to kill someone. Then there are exceptions for self-defense, and there are conditions that break the crime of killing down into various categories of murder in various degrees, and manslaughter, and so forth. The nuances get complicated. So yes, in general, political speech should be protected, but that is not the issue here. The problem is not as the State has attempted to present, the matter of a few too many emails in some guy's email inbox and the guy got angry because he didn't want to move them to the junk mail folder. The issue is something entirely, wholly different and it lasted for well over a year, and there are nuances. The issue involved two relatively sophisticated technical operators engaged in a battle of move and counter-move with escalating psychological harm until the right conditions were met that someone, namely the defendant, popped off.

This is not an effort to excuse the defendant's behaviour, rather, it is a point that the conditions of 18 U.S.C. § 3553(a) are substantially challenged given that the State has a vested interest in maintaining a delusion in order to protect themselves from what amounts to serious 8th amendment violations, deficiencies of investigation, issues with incarceration, and a raft of other nastiness which will, eventually, be uncovered and brought into the light.

The sentencing hearing itself will be a final opportunity to bring some order to affairs, to try to cut through the veil of misinformation sustained by the State and to appeal to the cold, hard truth of evidence. In January and February of 2024 a long discussion was held with counsel regarding whether or not a Trial would need to be held, not for the purposes of reaching a verdict, but simply for the purposes of uncovering the facts and forcing the State to cease its commitment to "vague truthiness" as the evidentiary standard. The defendant was very disheartened to realize

the enormous obstacles facing the simple effort to plead guilty to an accurate accounting of events. In the end, because of his father's deteriorating health, the defendant purchased his freedom using the currency of lies offered by the State.

The size of this document represents the fact that counsel and the prosecution have been delinquent in establishing an accurate accounting of the characteristics of the offense and of the defendant as per 18 U.S.C. § 3553(a)(1). Even though this document should not materially impact the outcome of the sentencing hearing, the defendant is adamant in contravening the advice of counsel, which he perceives as operating from a transactional moral framework and is, as such, incompatible with the framework of morality and ethics which defines the defendant and which motivates the defendant's commitment to social justice and which underpinned, no matter how disastrously, inappropriately, or stupidly, the behaviour driving both of the charges. As such, the defendant can see no option other than to submit this document in the interests of 18 U.S.C. § 3553(a)(1).

A sentence of Time Served is anticipated, as the Pre Sentence Report has suggested guidelines less than the time served, and all parties appear generally in agreement. However, the fact of the matter remains that the offense is still fundamentally misunderstood and, as the defendant purchased his freedom with a currency of lies under the duress imposed by an ill-gotten pre-trial detention, resulting in an effective overall punishment that represents a grievous 8th amendment violation due to the resulting permanent exile from home, family, and the loss of career - all of which could have been avoided through more careful attention to the facts and without sacrificing the essential ends of justice.

Here is an outline of the contents of the document:

- DESCRIPTION OF ATTACHED ANALYSES
    - Sentencing Analysis

- - An analysis of AUSA Warlick's analysis
  - An analysis of how 'vague truthiness' has caused a problem in this case
  - An analysis of the Onslow communications regarding the passport
  - An analysis of the defendant's problematic 4246 quote
  - An analysis of the costs of e-mail bankruptcy
  - An analysis of the costs and viability of email filtering
  - An analysis of cognitive liberty and subject line weaponization
  - An analysis of the personalization & opt-out features of NationBuilder and their availability across jurisdictions
  - An international analysis of the communications legislation based on passive messaging as in the age of active surveillance through email and the crisis of opt-out control
  - An analysis of the origin of the claim that the defendant is a Socialist
  - An analysis of the implications of continued prosecutorial political libel
  - An analysis of digital stalking as psychological abuse
  - An analysis of USSG 5K2.10 in the context of psychological abuse and cyberstalking
  - An evidentiary analysis of the defendant's concerns about email messaging
- THE ISSUE OF PROPERTY RETURN
- DEVOLUTION OF POLITICAL RHETORIC
- EMAIL Sent Nov 16 2022 - Pending Attempted Surrender
- EMAIL Sent Nov 17 2022 - Pending Attempted Surrender
- CHARACTER REFERENCE DOCUMENTS
  - Attached at end : Letter from Consulate Liaison Officer (On Behalf of Defendant)
  - Attached at end : Letter from Combat Veteran (On Behalf of Defendant)
  - Attached at end : Transcript of Video made in Support of Defendant

- OCCUPATION OF THE DEFENDANT
- THE ISSUES OF 2012-2015 - THE MENTAL HEALTH DIMENSION
- DISSECTION OF AN EMAIL CONVERSATION
- IDENTIFICATION OF THE CHARGE 1 PARTIES
- ACQUISITION OF THE I-551 AND VISA ISSUES
  - Attached at end : OIG Response
- THE NATURE OF DEPENDENTS, FARMING
- TRANSLATION OF AFFIDAVIT DOCUMENT
  - Attached at end : Original Affidavit
- ON THE MATTER OF THE PHONE

Together, this provides a more substantive picture of the events and the character of the defendant. It does not argue for a material change in the sentencing. The defendant still believes that the following downward departures and reductions apply (which will likely only make sense upon review of all the material in this document).

- 4C1.1 - on the basis of the fact that any reasonable individual would not consider the threats credible when considered in the fullness of evidence. With regards to Charge 1, FBI Agent Corey Zachman was on premise at 310 New Bern for another incident and opportunistically was invited to survey the problematic calls. They were clearly identified by an individual from overseas and there were, in the fullness of evidence, contextual phone calls that could be argued to establish a reduction in credibility. Charge 2 included substantial similar context that is not reported. Note, this absolutely does not diminish the fact of 18 U.S.C. § 115 violations, nor does it decrease the responsibility. This is an academic point about the applicability of the 4C1.1 statute were the fullness of evidence taken into consideration.

- 5K2.13/5H1.3 - There are grounds for a downward departure due to the mental duress, not because of the intoxication, but because of the background due to what can be called the "2012-2015 response" or trauma response associated with previous events. While the intoxication/alcoholism and benzodiazepines did result in a substantially diminished capacity that, very likely, led to the defendant "crossing the line" from angry vitriol to actual threats, the underlying intolerance to the communications, but especially to the treatment by the consulate, was due directly to the 2012-2015 trauma.
- 5K2.10 - The battle over the communications issue was a pitched battle between two technically sophisticated adversaries. Due to the 2012-2015 trauma the defendant was in a severely compromised state in 2020, when the initial digital harassment began. The analysis by the prosecution simply is inaccurate, on multiple fronts, and does not bear the weight of scrutiny. Over a period of months the defendant was the target of specific harassment leveraging the digital properties controlled by Hines Digital and including multiple NationBuilder installations as well as other digital messaging platforms targeting the defendant's multiple network presences. The defendant, despite being in a state of mental health crisis due to the 2012-2015 trauma, responded with a combination of filters and some other strategies but fundamentally rejects the notion that it is the victim's responsibility to manage harm, just as it is not the victim's responsibility to mitigate either harm or risk in sexual assault milieus. The defendant points out that the Republican Party's digital platform tooling fully supports the requisite communication control capabilities but that these were specifically and intentionally disabled as a matter of jurisdictional awareness and that, were the defendant a citizen of the European Union then that simple fact would have granted him legal recourse. It is only because the defendant is an American that he was forced, in his diminished state, to receive the unwanted communications which impinged upon his cognitive liberty. It is a fact of law that the individual liberties of Americans are diminished relative to Europeans in this

matter. During this period the defendant was forced to seek and receive medical treatment that persisted over a year and that was a contributing factor (benzodiazepines) to the problematic behaviour. Thus, the specific harms experienced by the defendant ranged from substantive opportunity costs, to being chased into the national forests, to the exacerbation of a mental crisis, to the need to seek medical attention, to the assault on cognitive liberty and all because of actions which can be demonstrated to have been focused, intentional, and effortful as revealed by digital forensics and by the simple fact that other Iowa voters were not, in fact, targeted by the state of North Carolina, the KKK, or other republican outfits represented by Hines Digital. Furthermore, since several of the email addresses ultimately associated with the defendant through the platform's personalization engine were known, by the defendant, to be in the process of retirement and were effectively 'hard to dig up' without engaging in some form of explicit, target centric, research, then, when you combine that with the need to merge that with extensive personalization data which necessarily contains comprehensive communications controls, then the argument for accident becomes tenuous.

Furthermore, when you note that the request for communications termination is not being made as a citizen seeking political speech suppression, but as a citizen requesting the cessation of medical and physiological harm, then failure to honor that request implies intention to elevate the defendant's blood pressure, heart rate, and ambient adrenaline to the point where cardiac arrest and stroke were likely. Therefore, failure to honor the defendant's request was equivalent to an act of harm of potentially lethal consequences. The digital forensics support the claim that the actions were, in fact, personally directed and not "whoopsie daisy" and "that's just the way it goes" as asserted by the prosecution. This is directed psychological abuse, it is intentional, it is targeted, and it is supported by digital forensics. It is simply schoolyard bullying that is consistent with the Republican

trope of "owning the libs". This is, very specifically, and very directly, the architecture of the 5K2.10 downward departure. Whether or not the downward departure is applied at this point is moot, however, what is important to realize is that the characterization of the conflict proposed by the State is substantially different from this characterization and the States characterization rests only on "vague truthiness", not on "Objective Reality"

Because the pathway to application of 5K2.10 in this context is not immediately clear, two preparatory analyses were provided. Had the defendant not be sequestered in pre-trial detention, the efforts to develop this line for the legal utility it may provide future cases rather than its utility for this particular case would have been more developed. The defendant believes, and has expressed at great peril to himself, that it is important to attempt to derive social benefit from unfortunate situations such as this, and in this case one area of social benefit is a better understanding of the means and mechanisms by which significant gaps in legislation and legal precedent can be advanced to meet the challenges of the rapidly advancing digital age. Had the defendant not been incarcerated or had the defendant had more willing counsel, these social benefits could have been achieved without intruding on the administration of justice. The defendant thanks the court for its indulgence in this graceless attempt to derive some 11th hour social benefit from this unfortunate sequence of events.

It should be noted that the defendant held, prior to current counsel, that a careful, detailed, factual, and extensive forensic analysis could potentially lead to an affirmative defense at trial, however, there appeared to be some technical legal problem with the preconditions for the affirmative defense. Given that, after two years we are still struggling to come to grips with the basic, evidence driven, account of the facts and clear up the massive distortions of the case by the State, such an effort may have taken too many years to have been worthwhile.

In conclusion, the facts and information in this document serve only to address the goals of 18 U.S.C. § 3553(a) and to establish, clearly, and finally, the characteristics of the offense and the characteristics of the defendant. There is no expectation of any significant departure from the anticipated sentence of time served, a guilty plea entered on charge 1, with the state dropping charge 2. The defendant wholeheartedly agrees that it is sad that we are at a time in this nation's history when 'lashing out' is the modus operandi of political discourse and regrets that he lowered himself to the standard of the President of the United States in his behaviour.

Respectfully submitted this 3rd day of July 2025.

Eric Charles Welton

*[signature]*

51M3

Wiang Tai

Amphur Pai

Maehongson, 58130

Thailand

ewelton.general@gmail.com