DISSECTION OF AN EMAIL CONVERSATION

This section breaks down an email between the defendant and the Iowa Office of Ombudsman (https://ombudsman.iowa.gov/).

The Office of Ombudsman was established by and operates under the authority of Iowa Code Chapter 2C. The office has adopted rules, Iowa Administrative Code [141], regarding the office's organization, practices and procedures.

The Office of Ombudsman serves as an independent and impartial agency to which citizens can air their grievances about government. By facilitating communications between citizens and government and making recommendations to improve administrative practices and procedures, the Ombudsman promotes responsiveness and quality in government.

The Ombudsman has authority to investigate complaints about Iowa state and local government, with certain exceptions. The Ombudsman attempts to resolve most problems informally. Following an investigation, the Ombudsman may make findings and recommendations and publish a report.

The defendant reached out to the Office of the Ombudsman on 3-January-22. Granted, these occurred after the events which resulted in the 18 U.S.C. § 115 violation, but when assessing the characteristics of the defendant for the purposes of 18 U.S.C. § 3553(a)(1), it is important to look at the entirety of the defendant's behaviour to determine whether or not the event of concern represents a specific and isolated incident or whether it is indicative of a common pattern.

The court is reminded of the AUSA Gregory Radics' assertion in D.E. 15-4, where he states "*the evidence appears to show that he is quick to anger and to threaten violence and murder*

*following even slight provocation (essentially junk emails sent to him) and this arrest will likely only increase his volatility and propensity to threat violence and murder.*"

We are now examining the evidence. As we will see, the evidence, had the prosecution bothered to assess it, demonstrates something quite different from what was insinuated and what led to the substantial 8th amendment violation delivered.

Note that the subject matter of the emails, which MUST BE PROCESSED, is, "*they lie, cheat, and steal*". in order to put the emails in a junk folder. This is a message which cannot be avoided using the solution proposed by the presumptive expert on cognitive liberty and digital communications AUSA Gregory Radics. Processing this subject line, for the purposes of disposing of the emails in the junk folder, specifically impinges upon the cognitive liberty of the defendant and, due to the specific characteristics of the defendant, results in physiological harm.

It is for this reason, the defendant had been pursuing a polite and respectful effort, within the confines of the law, to terminate communications. This effort had been ongoing for months, which is why AUSA Radics' claim, supported by AUSA Warlick, that the defendant is 'quick to anger' is dubious.

Rather, it was the shock of a sudden resumption after a hiatus from communication, and in the context of other events at the time that spurred the response. On top of that, the topic, being fundraising and election-lie propaganda emails, ultimately caused the violent reaction, before the defendant settled down into the steady pace of, once again, engaging in the battle of principle with which he calmly and systematically engaged.

The battle of principle is that it is inappropriate for members of the Donald J. Trump cult of personality to abuse their claim to political speech to fundraise for activity serving only to destabilize the United States.

In the interests of thoroughly canvassing all dimensions of 18 U.S.C. § 3553(a)(1), it is imperative that we step through this email, one of many such emails, exploring any and all possible avenues by which the IowaGOP could be requested to cease pestering citizens with their delusional propaganda about election theft and their efforts to delegitimize the 2020 election.

Emails and names have been redacted with XXXXX's.

The Header shows us the source of the communication:

    From: Eric Welton (Gmail/General)

    <ewelton.general@gmail.com><mailto:ewelton.general@gmail.com>

    Sent: Monday, January 3, 2022 11:31 PM

    To: XXXXXXXXXX [LEGIS]

    <XXXXXXXX@legis.iowa.gov><mailto:XXXXXXXX@legis.iowa.gov>

    Subject: Fwd: Fwd: they lie, cheat, and steal

Now comes the first paragraph

    Here are a few that remain undeleted - I do not maintain a long
    history of emails.  This is the most recent "re-addition", where,
    for some reason, XXXXXXXX considers me one of the "Top"
    republicans.  This indicates that there has been *zero* effort to
    stop communicating with me, and suggests that there is actual
    malicious intent behind the republican actions.

This highlights one of the defendant's common complaints

- The defendant keeps getting "re-added" to the email list from which he continually unsubscribes

- The defendant expresses frustration that there has been no effort to utilize the existing features of the software platform utilized by XXXXXXX

- The defendant is frustrated that XXXXXXX knows very well that the defendant is absolutely not a "Top Republican" because this version of the email is *not* going to other people, such as his father.

The defendant continues.

```
You can see that the pace started to ramp up - but I managed to
nip this one in the bud when I caught it on the 18th.  I wound up
making about 200 phone calls and emails on the 18th and 19th
reminding every republican connected with hines.digital and the
state of Iowa that, once again, they had started contacting me,
that they needed to stop, and that - once again - I considered
their harassment an act of physical violence directed against me
and my family.
```

This alerts officials within the formal apparatus that the defendant has made multiple non-threatening calls to the vendor, Hines Digital, which is listed at the bottom of the IowaGOP website, as the vendor responsible for operating the NationBuilder installation as well as the IowaGOP itself, attempting to convey the Unsubscribe message.  This effort is what Agent Zachman would call obsessive, and that may be accurate.  On the other hand, what is important to realize is that this is non-violent communication directed at IPH since IPH is not responding to any direct unsubscribe requests.

```
I then tried to retain a lawyer (XXXXXXXXXX) and contacted the
police in Anne Arundel County Maryland - they still haven't done
anything, although I was contacted on Dec. 31st by Det. XXXXXX
XXXXXXX - i was attempting to contact her yesterday when the
```

```
phone officer informed me that he did not believe in the rule of
law and suggested that access to the police should be reserved
for Trump supporters.
```

This notes that the defendant is, again, attempting to work through the structures of the law even though, in the United States, based on his experience in 2012-2015, working with formal institutions such as law-enforcement is almost always a hopeless and fruitless task. As the defendant found out, the law enforcement agents in Anne Arundel county were not sympathetic to assisting a liberal, they were, rather, interested only in supporting the Donald J. Trump cult of personality. The tone of this communication remains civil, it is factual, it communicates information which is a literal and direct call for assistance to anyone in the community, and all of this effort, the entirety of it, is to convince the IowaGOP to utilize a feature, which already exists in their software, but which they willfully choose not to use.

```
If i had not caught this and acted quickly, it would have
ballooned up and spread to other organizations as before -
resulting in my inbox filling up, legitimate mail bouncing, and
my bandwidth consumed with downloading message after message -
many of which contain intrusive tracking (see Hines Digital's
Terms and Conditions), which I also consider an abusive practice.
```

Here the defendant enumerates some additional legal concerns, which no doubt were forefront in AUSA Lori Warlick's mind when she formulated the official United State's position that "e-mail bankruptcy" and "giving up" in the face of oppressive technology is the only possible American response.

```
I consider every statement in these emails to be fantasy and an
attempt to disrupt and damage political discourse in the united
states. When i was growing up Republicans were simply for less
```

```
government oversight and generally libertarian socially.  The
party today is nothing I can identify and has no roots in reality
of any kind - i do not identify republicans as americans and i
would welcome splitting the country into a liberal social
democracy and a second nation where all the white nationalist and
zealots can live.  once upon a time republicans were a party you
could disagree with, but also respect.  the trump administration
has tarnished and may yet potentially destroy the country.
```

Here we see the defendant expressing the political views which put him at odds with those he is receiving. He expresses frustration, but it is nowhere near as violent as the January 6th rioters, who are now pardoned and excused, nor is it as violent as Paul Gosar. It is not even as violent as the Charlie Kirk supporter who asked when Republicans could start killing Democrats.

```
but, as you can see - there is *zero* effort to identify me, and
if there is an effort to identify me, then the GOP is acting with
malice and their emails constitute abuse.  from my vantage point,
iowa law enforcement is not willing to stop this abuse because
they no longer respect the rule of law - which means that
violence is the only option that remains.
```

This is where the defendant expresses his willingness to cross the line, and connects his position with the actions which he took a few months earlier. This is where it is correct to be concerned. One must also wonder, what is the political goal achieved by the IowaGOP by not simply utilizing the voter opt-out feature of their software, the feature which provides voter opt-out capabilities for jurisdictions in which it is the law? Given the severe harm and distress it is obviously causing the defendant, what is the positive social benefit from forcing the defendant to receive the message that the 2020 election was fraudulent, a story which was thoroughly

debunked? There is none, and this is the beginning of the path to a 5K2.10 downward departure. Knowing that there is no viable commercial or political goal here and that the recipient of the messages is experiencing substantive physiological harm to the point that the defendant is currently **receiving medical treatment as a direct result of this activity,** and that the defendant had previously experienced substantial harm, it stands to reason that the actions taken by the IowaGOP, and specifically the actor responsible for the failure to activate the opt-out feature, constitute malicious and intentional psychological abuse.

> I sincerely hope that we can find an alternative - but so far,
> *no* law enforcement or government official has been willing to
> do that. I am pursuing criminal charges against XXXXXXX in
> Maryland. I am also dumbfounded that Iowa is so staunchly caught
> up in the cult of the orange lord that the GOP *refuses* to leave
> me alone - what could they possibly gain from attacking me over
> and over like this? I have made it abundantly clear to every
> republican i could find in the state that they should never,
> under any circumstance, *ever* contact me. Thus, when they do, I
> can not help but consider it attempted murder.

Consider again that the defendant is

- At risk for heart attack and stroke, which can result in death
- Receiving medical treatment as a result of this specific situation
- Engaging in herculean efforts to avoid the problem, including
  - The use of filters across multiple systems and platforms
  - The use of multiple email addresses (because e-mail bankruptcy is not an option)
- Believes he has digital forensics to indicate the pursuit is active, not passive

And he wraps up with

```
thank you for your consideration,

 Eric Welton
```

Now, the ombudsman replies

> I am not the most tech-savvy person, and so this may be a
> dumb/naive question, but can I assume you sent back an
> "Unsubscribe" request to the sender of these emails? That's what
> I do on my personal account, and that seems to stop them.

This is quite frustrating because the answer is an unequivocal yes. Like AUSA Lori Warlick, the

ombudsman simply does not believe that the defendant is experiencing a targeted digital attack.

The defendant, who has decades of experience operating technology like email systems, is

experiencing the following - and is exhausted of having this *exact same conversation* over and

over and over with people who say "why don't you unsubscribe?" - and the answer is, because it

does not work, because that is not the issue here.

- Every time he un-subscribes he is automatically re-added
- He is often re-added at other email addresses, in addition to the one from which he
  unsubscribed
- Often the unsubscribe is simply broken or "reliably misconfigured"

This is what the defendant responds:

> Again,
>
> I want to stress that the problem is *not* a single email
> address.

I have managed to unsubscribe email addresses, as they come under
attack, and assuming that i am online when the "first addition"
is made.

If I am, for example, taking network measurements out in the
forest, or setting up the remote access relays, i may be out of
touch for a month.

When I get back, I usually have a few hundred *legitimate* emails
to deal with, spread across dozens of email addresses.

This conflicts with AUSA Lori Warlick's expert opinion, speaking on behalf of the United States, when she suggests that the defendant just "get a new email address." Presumably AUSA Warlick means that the entirety of the defendant's email infrastructure should be restructured to support the IowaGOP or change at any time and in any manner it does not fit the expectations of a user like AUSA Lori Warlick, who is an expert in digital communications and social digital transformation. The defendant continues:

The multiple email addresses are used as a form of defense
against spam in general - for example, I used to have software
subscriptions pegged to XXXXXXXXX<mailto:XXXXXXXXXXX>. However,
that list became polluted by too much advertising - so I stopped
using that for about 3 years, slowly migrating my software
subscriptions to new addresses as renewals came due.

That email address is the one that got added to the IowaGOP in
December.

The significance of this is that the address xxxxxxxxx was known not to be in use. It took someone some effort to dig it up. It was being phased out. The only way that email address could have been found was if someone were researching. Now, notice something

```
Then we see it start - the NationBuilder installation used by the
IowaGOP (contact@iowagop.org<mailto:contact@iowagop.org>) starts
posing as different people "State Republicans", "Kim Reynolds",
"Jeff Kaufmann" - and we see the emails start to "speed up".

They address me as Eric Welton, registered "Top Republican" in
Charles City IA (meaning that they *know* full well that I have
requested, thousands of times, to be left alone)
```

This means that the email address identified above has been associated with the defendant's voter profile. This voter profile contains the personalization information which includes opt-out preferences which are required by law in other jurisdictions, including healthy democracies that have strong freedom of speech protections and have not collapsed due to respecting individuals rights not to receive fundraising propaganda like those underpinning Donald Trump's election destabilization efforts. Again, because this has proven extremely confusing to AUSA Warlick, and she thinks that the defendant considers this as "personal", what is going on here is that there is a harvesting of personal information and that is coalescing around a voter record. This is being done by the NationBuilder platform as part of their platform's value add. This is why organizations like the Iowa GOP and the North Carolina GOP invest in the software and hire consulting firms such as Hines Digital to run it. The personalization engine combines all of the personalization information and personalizes the voter outreach - this personalization step is what AUSA Warlick considers "not personal". In jurisdictions where it is required, this "non-personal personalization step" includes the ability to respect a voter's wish not to be

contacted. This is connected to the "unsubscribe" feature of the platform - e.g. that little button on the bottom of emails you receive that say "if you did not like this, press here and you will not receive more".

Here is the catch, the unsubscribe feature *must* be configured correctly. If it is not configured correctly and operating correctly, then the unsubscribe feature does not work. Here is another catch, there is no law that requires political organizations to honor the unsubscribe requests in the United States - that is not a feature of the TCPA nor of the CAN-SPAM act. There is no political will to do so because of the common misunderstanding, as expressed by this Honorable Court, that American democracy will dissolve should political parties be required to respect opt-out requests. Unfortunately, there is absolutely no empirical evidence to support this assertion and the assertion represents a rather naive understanding of the policy domain.

The Ombudsman, like AUSA Lori Warlick, really wants the story to be "just unsubscribe" and so does the defendant. The defendant, however, wants to take it a step further and say "please attach the unsubscribe" request to my voter information the same thing that lets you tailor and personalize the messages to me, as a Top Republican, registered to vote at the specific voting address provided in the highly personalized emails you send to the **newly harvested email address**.

> First one email arrives every few days, then one arrives every
> day.  If I am not vigilant, or am focused away from my computer,
> this continues to speed up and branches out into PACs.  Once in
> PAC-land, it gets to "special focus groups" calling for
> participation in more nefarious activities - like storming the
> capitol, propogating the myth of voter fraud, pursuing the crazy
> pillow guy's conspiracy theories.

The crux of the problem is, again, not that the defendant was getting a few too many emails in the one email address, as AUSA Radics and AUSA Warlick strive to make the court believe, but that the problem grows. Affiliation with the IowaGOP or the North Carolina GOP as a Top Republican is a sort of "Gateway Drug", inviting misfits that, in the worst case, included the Ku-Klux-Klan, a group whose speech straddles the line between politically acceptable and politically unacceptable.

> As *soon* as a new email address starts showing signs of
> Republican infection I unsubscribe it and then begin trying to
> get law enforcement and legislators involved. I sent the GOP
> around 10,000 emails repeating "Jeff, leave me alone" - i called
> them a few dozen times (keeping in mind, I have to spend all
> night awake) - i call the FBI, i make a FTC report of wire fraud,
> I do everything I can think of to communicate to the Republican
> party, NationBuilder, and XXXXXXX that I do *not* want to receive
> any more email.

Agent Zachman saw one of those efforts, totalling 1600 emails and commented that it appeared to signal either cut/paste or automation. Agent Zachman made the unqualified assertion that the emails seemed obsessive, but we must understand that Agent Zachman - the one who lied to the defendant about property return and could not accurately report about the relationship between IPH, NationBuilder, Hines Digital, and the Republican Party, is the one overstepping his professional boundaries an opining about psychology. Keep in mind, the defendant is a computer programmer for whom the above automation exercise takes but a few moments of effort. The hope is that the extreme volume will bypass people who are used to simply "putting it in the junk mail" because they will be required to parse the subject line sufficiently many times

that the message will be delivered. This is the concept behind the high-volume emails. There is nothing more sinister than that. It is a cognitive liberty hack.

The defendant continues to provide an example of the

    In a few weeks, this cycle will repeat on a new email address.

    I just joined as consulting partner in an ethical mining audit
    certification business (I handle the cryptography) - when I join
    a project, I often get a new email address.  This becomes a
    target for someone like XXXXXXX and the IowaGOP - who then link
    it to the *same* voter registration information and begin the
    process *again*.

Here the defendant explains to the ombudsman the same story that has been explained to the court. This is the personalization step that digital communications expert AUSA Lori Warlick considers as "just how it goes" and something for which we should submit completely, even though, in other healthy democracies and jurisdictions this is not a problem, because their citizens are digitally literate, rights focused, and not constantly attacked by federal employees like AUSA Warlick who strive to embody learned helplessness and digital disempowerment.

    This is what needs to stop.  It is bad enough that the Republican
    party sent me false ballot information and tried to convince me
    that I had not voted, and that my vote was not counted - and i
    find their general disconnection with reality troublesome - and I
    hate the degree to which they are working to actively undermine
    the rule of law and the united states - but what has to stop is
    that I, *the person*, need to be unsubscribed from their
    attention.

```
If I punch you in the face and call you brad.  then I punch you
in the face and call you chad.  You still get punched in the face
twice - the name you call someone doesn't change who gets hit.  I
want the Republican party to stop hitting me in the face and
pretending that I'm someone different each time they hit.
```

This is where we start to see the defendant using a language of violence to illustrate a point because it draws a parallel and makes people uncomfortable.  Without that language, people, such as AUSA Warlick simply repeat their assertion that "it doesn't bother me, so it shouldn't bother you".  And the defendant refuses to accept that, since it is a matter of principle.  A black man hanging from the lynching tree does not, directly, bother me because it is not me or my direct family hanging from that tree.  However, on principle, and through the property of empathy, the defendant can not accept the Warlickian excuse that we should allow lynching just because "it's the way the world works" or "it doesn't bother me, so it shouldn't bother you."  Issues of principle, such as rights, matter and the right to opt-out of unwanted communications in order to avoid a heart attack and to preserve cognitive liberty happens to be one of the rights that the defendant, and most literate people outside of the United States hold.  The defendant summarizes this with the end of his email to the Ombudsman

```
"just unsubscribe" - that sounds like Feenstra's response "get
more email addresses"

ARGH!
```

And the ombudsman responded

```
Eric, who did you talk to in law enforcement in Iowa? I'd like to
know who they are and exactly what they had to say.  If you can
share email exchanges you had with them, even better.
```

The conversation continued for a while, but the above 4 email exchanges is sufficient for the purposes of 18 U.S.C. § 3553(a)(1). This email exchange was part of the evidence available during the detention hearing. It shows that the defendant is someone who is frustrated, conscientious, eager to engage the proper legal channels, and absolutely unwilling to budge on what he considers to be an issue that has two components:

1) A dimension of personal attack by a specific individual from Anne Arundel county Maryland who is responsible for not utilizing or properly configuring the unsubscribe, opt-out, and personalization features of the software platform he manages and who, based on the digital forensics abilities of the defendant, appears to be acting with malicious intent (more likely like a petulant schoolkid who thinks harassing the defendant is funny, akin to making crank calls)

2) A philosophical and political dimension regarding the principle of the defendant's fundamental right to opt-out of both political and non-political communications, especially personally targeted digital communications which transgres the boundaries of the digital self.

The email conversation, which is typical of the defendant, demonstrates, consistent with 18 U.S.C. § 3553(a)(1), an individual who is substantially interested in working within the law and within the structures of society and who has extreme patience, contrary to the misleading statements of AUSA Radics that he is "quick to anger." To be fair to the prosecution, the conversation does reveal an individual who is willing to use violent imagery in an attempt to communicate when it appears that the audience, likely conditioned on American media and news, is likely to be somewhat unresponsive to civil or erudite communications.

The rest of the email exchange is included below, because it demonstrates the tenor of polite conversation that is typical of the defendant. It also describes the nature of the legal conundrum

faced by the defendant. There is simply no legal structure compelling the IowaGOP or the North Carolina GOP to behave like reasonable human beings, yet there is a requirement placed upon the defendant to receive the abuse and remain stolid.

Here is the ombudsman's response

> Eric –
>
> I have done quite a bit of legwork to research the matter you brought to our attention – incessant and unwanted emails from the Iowa Republican Party. Although, as I said, political parties and state lawmakers fall outside our oversight jurisdiction, I did want to see what avenues might be open to you to pursue criminal charges against the senders of the emails. It struck me that harassment might be the most apt charge in a case like this.
>
> I spoke with the Iowa Attorney General's prosecuting attorneys' training council, the Iowa Secretary of State's office, and I tapped a law librarian for research. I also did some of my own research. Unfortunately, I can find no precedent in Iowa or elsewhere for a successful prosecution under similar circumstances.
>
> One prosecutor I talked to said that harassment can only be charged when contact is "without a legitimate purpose," and that campaigning serves a legitimate purpose protected by the First Amendment. The Iowa Legislature reportedly considered a bill to criminalize unwanted political emails in 2018, but it died due to First Amendment concerns.

I found a number of news stories and legal treatises on this issue that all reached the same conclusion. This one from Duke Law School might be the most insightful:

https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=1070&context=dltr

This piece from the LA Times is quite relatable to your situation:

https://www.latimes.com/business/story/2020-09-11/stopping-political-emails

Here is an excerpt from an FAQ page on the Federal Trade Commission's website:

*My obligations as a marketer aside, I have a question as a consumer. Campaign season is upon us and I've been getting a lot of email urging me to support or donate to various political candidates. I've asked to be removed from their lists, but the email keeps on coming. Is this okay under the FTC's rules?*

*CHRISTOPHER: The CAN-SPAM Act applies only to commercial email, whether sent individually or in bulk. It doesn't apply to non-commercial bulk email. Furthermore, political messages are protected under the First Amendment. Of course, many groups not covered under the law have chosen voluntarily to honor UNSUBCRIBE requests. But if you're getting unwanted email from entities not subject to CAN-SPAM that don't offer an UNSUBCRIBE feature, another option is to contact them directly to express your preference not to receive more messages. (Don't just respond to the email, which may not be read.) If any group*

> *is trying to win you over – whether it's an advertiser, an advocacy*
> *group, a candidate, etc. – it could be persuasive to let them know how*
> *you feel.*
>
> I am truly sympathetic to your frustrations about the emails.
> But as you can see, I really have no means to suggest to any
> police or prosecutors in Iowa that they consider criminal charges
> in your case.
>
> I am sorry I don't have better news to deliver.

### The defendant responds

> Eric –
>
> I have done quite a bit of legwork to research the matter you
> brought to our attention – incessant and unwanted emails from the
> Iowa Republican Party.  Although, as I said, political parties
> and state lawmakers fall outside our oversight jurisdiction, I
> did want to see what avenues might be open to you to pursue
> criminal charges against the senders of the emails.  It struck me
> that harassment might be the most apt charge in a case like this.
>
> I spoke with the Iowa Attorney General's prosecuting attorneys'
> training council, the Iowa Secretary of State's office, and I
> tapped a law librarian for research.  I also did some of my own
> research.  Unfortunately, I can find no precedent in Iowa or
> elsewhere for a successful prosecution under similar
> circumstances.

One prosecutor I talked to said that harassment can only be charged when contact is "without a legitimate purpose," and that campaigning serves a legitimate purpose protected by the First Amendment.   The Iowa Legislature reportedly considered a bill to criminalize unwanted political emails in 2018, but it died due to First Amendment concerns.

I found a number of news stories and legal treatises on this issue that all reached the same conclusion.   This one from Duke Law School might be the most insightful:

https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=1070&context=dltr

This piece from the LA Times is quite relatable to your situation:

https://www.latimes.com/business/story/2020-09-11/stopping-political-emails

Here is an excerpt from an FAQ page on the Federal Trade Commission's website:

*My obligations as a marketer aside, I have a question as a consumer. Campaign season is upon us and I've been getting a lot of email urging me to support or donate to various political candidates. I've asked to be removed from their lists, but the email keeps on coming. Is this okay under the FTC's rules?*

*CHRISTOPHER:  The CAN-SPAM Act applies only to commercial email, whether sent individually or in bulk. It doesn't apply to*

*non-commercial bulk email. Furthermore, political messages are
protected under the First Amendment. Of course, many groups not covered
under the law have chosen voluntarily to honor UNSUBSCRIBE requests. But
if you're getting unwanted email from entities not subject to CAN-SPAM
that don't offer an UNSUBSCRIBE feature, another option is to contact
them directly to express your preference not to receive more messages.
(Don't just respond to the email, which may not be read.) If any group
is trying to win you over – whether it's an advertiser, an advocacy
group, a candidate, etc. – it could be persuasive to let them know how
you feel.*

I am truly sympathetic to your frustrations about the emails.
But as you can see, I really have no means to suggest to any
police or prosecutors in Iowa that they consider criminal charges
in your case.

I am sorry I don't have better news to deliver.

And lastly, the ombudsman

Thanks for the nice note, Eric. I was actually born in raised
and around Chicago, so I, too, have an Illinois-Iowa connection
with you. I admire your pluck and offer you my encouragement.
You also have my deep respect for your work abroad. I'll
probably continue my fight stateside.

Best of luck,

The tone of the responses from the defendant are, clearly, in keeping with the mildly grandiose
character. These emails are not delusional, they are not insane, they are impassioned and they

are, above all patriotic and express a deep and abiding respect for the idea of a society based upon principles such as those which were, once upon a time, but no longer, the province of the Constitution of the United States of America.